UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PROMOTE THE VOTE, a Michigan
ballot question committee, JAMES
MURRAY, LAUREN LEGNER and
KELLIE KONSOR,

No. 2:18-cv-12692

    Plaintiffs,

HON. TERRENCE G. BERG

v

MAG. MONA K. MAJZOUB

RUTH JOHNSON, in her official
capacity as Michigan Secretary of
State, NORMAN D. SHINKLE,
JULIE MATUZAK, JEANNETTE
BRADSHAW and COLLEEN PERO,
in their official capacities as
members of the Michigan Board of
State Canvassers, and SALLY
WILLIAMS, in her official capacity
as Director of the Department of
State Bureau of Elections,

**DEFENDANTS' BRIEF IN
OPPOSITION TO
PLAINTIFFS' MOTION FOR
TEMPORARY
RESTRAINING ORDER
AND/OR PRELMIINARY
INJUNCTION**

    Defendants.

_____/

Andrew A. Nickelhoff (P37990)
Attorney for Plaintiffs
2211 E. Jefferson Ave., Suite 200
Detroit, Michigan  48207
313.496.9429

Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
Sharon Dolente (P67771)
Attorneys for Plaintiffs
2966 Woodward Avenue
Detroit, Michigan 48201
313.578.6838

Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

_____/


## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELMIINARY INJUNCTION


Heather S. Meingast (P55439)
Denise C. Barton (P41535)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434
Email:  meingasth@michigan.gov
P55439

Dated:  August 31, 2018

ii

# TABLE OF CONTENTS

Page

Table of Contents....................................................................................i

Index of Authorities..............................................................................ii

Concise Statement of Issues Presented....................................................v

Controlling or Most Appropriate Authority ............................................v

Introduction ..........................................................................................1

Statement of Facts................................................................................1

Argument ..............................................................................................4

I.    Plaintiffs' motion should be denied where a balancing of the equities weighs against granting injunctive relief. ........................4

    A.    Factors to be balanced when weighing a request for injunctive relief. ....................................................................4

    B.    Plaintiffs cannot demonstrate a "substantial" likelihood of success on the merits because they do not have standing to bring their claims. ................................................6

    C.    Plaintiffs cannot demonstrate a continuing, irreparable injury necessary for warranting issuance of injunctive relief. ................................................................................12

    D.    The harm to others factor weighs in favor of the Defendants................................................................................15

    E.    The public interest factor weighs in favor of the Defendants................................................................................16

Conclusion and Relief Requested..........................................................17

Certificate of Service .........................................................................18

# INDEX OF AUTHORITIES

Page

## Cases

*Allen v. Wright*, 468 U.S. 737 (1984) .......................................................... 7

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) ..................................... 4

*Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999) ..................................................................................... 15

*Chrysler Corp. v. Franklin Mint Corp.*, 32 F.3d 569 (6th Cir. 1994) .... 15

*Dayton Christian Schs., Inc. v. Ohio Civil Rights Comm'n,* 766 F.2d 932 (6th Cir.1985) ...................................................................... 14

*Dunn v. Retail Clerks Intern. Ass'n, 2*99 F.2d 873 (6th Cir. 1962) ......... 16

*Elrod v. Burns,* 427 U.S. 347 (1976) ......................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000) ............................................................................................................ 6

*Friendship Material, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100 (6th Cir. 1982) ............................................................................................ 5

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,* 23 F.3d 1071 (6th Cir. 1994) .......................................................................................... 14

*Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620 (6th Cir. 2000) ........................................................................................................... 5

*Jones v. Caruso,* 569 F.3d 258 (6th Cir. 2009) ........................................ 14

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000) .................................... 5

*Los Angeles v. Lyons*, 461 U.S. 95 (1983) ................................................... 7

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ................................. 6

*Mich. State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997) ............... 5

*N.E. Ohio Coalition for Homeless & Serv. Employees Int'l Union v. Blackwell,* 467 F.3d 999 (6th Cir. 2006) .................................................. 6

*Nader v. Blackwell,* 230 F.3d 833 (6th Cir. 2000) ...................................... 5

*Ohio Republican Party v. Brunner,* 543 F.3d 357 (6th Cir. 2008)............ 4

*Reporters Committee for Freedom of Press v. AT&T Co.,* 593 F.2d 1030 (D.C. Cir. 1979) .............................................................. 15

*Taxpayers United for Assessment Cuts v. Austin,* 994 F.2d 291 (6th Cir. 1993) .................................................................... 15

*U.S. Student Ass'n Found. v. Land,* 585 F. Supp. 2d 925 (E.D. Mich. 2008) ..................................................................... 6

*United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.,* 163 F.3d 341 (6th Cir. 1998) ........................ 5

*United States v. Miami Univ.,* 294 F.3d 797 (6th Cir. 2002)................. 14

*Whitmore v. Arkansas,* 495 U.S. 149 (1990) .......................................... 7

**Statutes**

Mich. Comp. Laws § 168.31(2) ................................................................. 9

Mich. Comp. Laws § 168.471 ................................................................... 2

Mich. Comp. Laws § 168.476 ................................................................... 7

Mich. Comp. Laws § 168.476(1) ..........................................................2, 9

Mich. Comp. Laws § 168.476(2) ..........................................................4, 8

Mich. Comp. Laws § 168.477(1) ............................................................... 7

Mich. Comp. Laws § 168.648 ................................................................... 4

Mich. Comp. Laws § 168.31(2) ................................................................. 9

Mich. Comp. Laws § 168.32(1) ................................................................. 8

## Constitutional Provisions

Mich. Const. 1963, art. 12, § 2 ..............................................................2, 4

## Other Authorities

2005 P.A. 71 ...............................................................................................9

## CONCISE STATEMENT OF ISSUES PRESENTED

1.   Whether Plaintiffs' motion should be denied where a balancing of the equities weighs against granting mandatory injunctive relief.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

*United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998)

## INTRODUCTION

As it turns out, Plaintiffs' request for injunctive relief is premature.  On August 31, 2018, the Bureau of Elections released its staff report recommending to the Board of State Canvassers (Board) that the Board certify the Promote the Vote (PTV) petition as sufficient for placement on the November 6, 2018, general election ballot.  (Ex. 1, 8/31/18 Staff report).  The Board, as it earlier indicated it would, will meet at 10:00 a.m. on Thursday, September 6, 2018 to formally determine the sufficiency of Plaintiffs' petition.  (Ex. 2, 9/6/18 Notice).  A meeting is thereafter scheduled for September 7, 2016 at 10:00 a.m., at which time Director of Elections Sally Williams and the Board will review ballot language for the PTV petition assuming its certification on September 6.  (Ex. 3, 9/7/18 Notice).  Any injury or harm Plaintiffs may have suffered as a result of the Bureau of Elections' rejection of certain petition signatures in the first sample of 500 signatures is no longer present or continuing.  The request for injunctive relief should be denied.

## STATEMENT OF FACTS

PTV is a registered ballot question committee, seeking to amend the Michigan Constitution to regulate the timing of issuing absentee

1

ballots, authorize no-reason absentee voting, require a straight party voting option on general election ballots, provide for automatic voter registration, require post-election audits, and other voting changes. To gain access to the ballot, PTV was required to submit 315,654 valid signatures of registered voters. (Ex. 1, 8/31/18 Staff Report); see also Mich. Const. 1963, art. 12, § 2.[1] On July 9, 2018, PTV filed its petition with the Secretary of State, which was the last possible day it could do so. *Id.*; see also Mich. Comp. Laws § 168.471. Upon filing, the Board was required to canvass the petition to determine whether the petition appeared in the proper form and whether there are sufficient valid signatures. Mich. Comp. Laws § 168.476(1). The Board's canvass is accomplished with the assistance of the Bureau of Elections acting as staff for the Board.

The Bureau's August 31, 2018 staff report fully describes the canvass and sampling process applied to the PTV petition. (Ex. 1, 8/31/18 Staff Report). With respect to the first sample of 500 signatures, the report notes that there were insufficient signatures to

---

[1] See Instructions for Initiative & Referendum Petitions, p 4, https://www.michigan.gov/documents/sos/Ini_Ref_Pet_Website_339487_7.pdf.

2

recommend certification of the petition and that a larger, second sample was required.  *Id.*, p 2.  The Bureau did, however, fully review and process the documents PTV provided on August 21, 2018 and thereafter attempting to rehabilitate signatures, including the signer affidavits. *Id.*  Of the 58 signatures PTV attempted to rehabilitate, the Bureau accepted five signatures as valid, including two of the affidavits. *Id.*

The staff report also describes the results of the second sample and the challenge to PTV's petition, which was filed by Protect My Vote on August 28, 2018.  *Id.*, pp 3-4.  The result of the second sample was sufficient for the Bureau to "recommend[ ] that the Board certify that the petitions contain a sufficient number of valid signatures."  *Id.*, p 4. And as noted above, the Board is scheduled to meet on September 6, 2018 to formally consider the sufficiency of PTV's petition (Ex. 2), and assuming the petition is certified, ballot language is set to be reviewed and approved on September 7, 2018.  (Ex. 3).[2]

---

[2] On August 17, 2018, the Bureau issued its public announcement inviting interested persons to submit proposed ballot language regarding the PTV petition. See Announcement, 8/17/18, https://www.michigan.gov/documents/sos/Announcement_-_Ballot_Wording_Deadline_-_MOFW_PTV_630431_7.pdf.

By law, the Board must complete its canvass of PTV's petition and declare the petition sufficient or insufficient at least two months before the November 6, 2018 general election.  Mich. Const. 1963, art 12, § 2, Mich. Comp. Laws §§ 168.476(2), 168.477(1).  And the Secretary of State must certify to the 83 county clerks the statewide proposals and their ballot language by September 7, 2018.  Mich. Comp. Laws § 168.648.

## ARGUMENT

### I.   Plaintiffs' motion should be denied where a balancing of the equities weighs against granting injunctive relief.

Injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies."  *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001).  But a balancing of the traditional injunction factors weighs in favor of Defendants, and the motion should be denied.

#### A.   Factors to be balanced when weighing a request for injunctive relief.

The factors to use in deciding whether to issue a temporary restraining order are the same as those for issuing a preliminary injunction, *Ohio Republican Party v. Brunner,* 543 F.3d. 357, 361 (6th Cir. 2008), which are:

4

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998). "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *Leary*, 228 F.3d at 736; *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). However, "the demonstration of some irreparable injury is a sine qua non for issuance of an injunction." *Patio Enclosures, Inc. v. Herbst.*, 39 F. App'x 964, 967 (6th Cir. 2002), (citing *Friendship Material, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).

**B.    Plaintiffs cannot demonstrate a "substantial" likelihood of success on the merits because they do not have standing to bring their claims.**

Plaintiffs allege that, as applied to them, Defendants' process for signature comparisons violated their Fourteenth and First Amendment rights, as well as their procedural Due Process rights.  Defendants submit that Plaintiffs lack standing to bring these claims.

To ultimately succeed on the merits in this case, Plaintiffs will bear the burden of proving their standing to sue in addition to the unlawfulness of the Defendants' practices.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).  Thus, Plaintiffs' likelihood of successfully showing standing is properly considered as part of the overall analysis of the likelihood of success on the merits.  *N.E. Ohio Coalition for Homeless & Serv. Employees Int'l Union v. Blackwell,* 467 F.3d 999, 1010 (6th Cir. 2006) ("The weakness of plaintiffs' showing of standing leads us to conclude that their likelihood of success on the merits is not strong."); *U.S. Student Ass'n Found. v. Land,* 585 F. Supp. 2d 925, 942 (E.D. Mich. 2008).

The "irreducible constitutional minimum" of standing is that for each claim, each plaintiff must allege an actual or imminent injury that

is traceable to the defendant and redressable by the court.  *Lujan*, 504 U.S. at 560-62; *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000).  The injury must be an "injury in fact," meaning "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' " *Lujan*, 504 U.S. at 560 (emphasis added) (citations omitted) (first quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984); then quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Here, Plaintiffs have not suffered a concrete and actual injury that is traceable to Defendants.

With respect to the State Board of Canvassers, Mich. Comp. Laws § 168.476 provides that "[u]pon receiving notification of the filing of the petitions, the board of state canvassers shall canvass the petitions to ascertain if the petitions have been signed *by the requisite number of qualified and registered electors.*"  (Emphasis added).  Mich. Comp. Laws § 168.477(1) provides that "[t]he board of state canvassers shall make an official declaration of the sufficiency or insufficiency of a petition under this chapter at least 2 months before the election at

7

which the proposal is to be submitted." In conducting this review, the Board is empowered to "hold hearings upon any complaints filed or for any purpose considered necessary by the board to conduct investigations of the petitions." Mich. Comp. Laws § 168.476(2).

The Director of Elections is appointed by the Secretary of State and supervises the Bureau of Elections. Mich. Comp. Laws §§ 168.32(1), 168.34. The Director of Elections is "vested with the powers and shall perform the duties of the secretary of state under . . . her supervision, with respect to the supervision and administration of the election laws." *Id.* As "a nonmember secretary of the state board of canvassers," the Director of Elections supervises the Bureau as it assists the Board in canvassing petitions, like the PTV petition. *Id.*

Subsection 476(1) provides that in conducting the canvass of petition signatures:

> *The qualified voter file **shall** be used to determine the validity of petition signatures by verifying the registration of signers and the genuineness of signatures on petitions when the qualified voter file contains digitized signatures.* If the qualified voter file indicates that, on the date the elector signed the petition, the elector was not registered to vote, there is a rebuttable presumption that the signature is invalid. If the qualified voter file indicates that, on the date the elector signed the petition, the elector was not registered to vote in the city or township designated on the petition,

8

there is a rebuttable presumption that the signature is invalid. *If the board is unable to verify the genuineness of a signature on a petition using the digitized signature contained in the qualified voter file, the board may cause any doubtful signatures to be checked against the registration records by the clerk of any political subdivision in which the petitions were circulated, to determine the authenticity of the signatures or to verify the registrations. . . .* [Mich. Comp. Laws, § 168.476(1).]

This subsection, as amended by 2005 P.A. 71, mandated that the Bureau, on behalf of the Board, use the qualified voter file to determine the genuineness of a signature. In other words, whether the signature on a petition is genuinely that of the person who is registered to vote under that name and in the jurisdiction stated. The section then permits signatures to be checked against the local record if the signature is unable to be verified via the qualified voter file.

As Plaintiffs note, Mich. Comp. Laws § 168.31(2) contemplates that the Secretary of State will adopt rules imposing standards:

(2) . . . the secretary of state shall promulgate rules establishing uniform standards for state and local . . . ballot question petition signatures. The standards for petition signatures *may* include, but need not be limited to, standards for all of the following:

(a) Determining the validity of registration of a circulator or individual signing a petition.

9

(b) *Determining the genuineness of the signature of a circulator or individual signing a petition, including digitized signatures.*

(c) Proper designation of the place of registration of a circulator or individual signing a petition.  [Emphasis added.]

Under this section, the Secretary may adopt rules for determining the genuineness of signatures but does not appear to be required to adopt such rules.  As Plaintiffs further note, however, the Secretary has developed guidelines relating to signature challenges.  (Doc. 6, Plfs.' TRO Brf., Page ID # 115).

Plaintiffs complain that the lack of formal, written standards for Bureau staff to use when comparing a written signature on a petition against the electronic signature in the qualified voter file resulted in unequal treatment of PTV petition signers when compared to other petition signers because it ultimately becomes a subjective assessment by Bureau staff.  (Doc. 6, Plfs. TRO Brf., Page ID # 115-119).

The Bureau's staff report briefly explains the process it used for signature comparison with respect to Plaintiffs' petition:

The Bureau of Elections assigns this task [signature comparison] to a select few of its full-time employees who possess years of experience in reviewing petition signatures. In view of the statutory mandate to compare the QVF's digitized signature to the petition signature, staff did not

10

accept disputed signatures as valid due solely to the affidavits [submitted by PTV]. Instead, staff carefully re-reviewed each of the 12 disputed petition signatures for which affidavits were submitted and the QVF digitized signature; this QVF-to-petition-signature comparison resulted in staff accepting 2 of the disputed signatures as valid. [Ex. 1, 8/31/16 Staff Report, p 2.]

Contrary to Plaintiffs' suggestion, inexperienced staff do not perform signature comparisons. Moreover, as Director Williams explained at the August 24, 2018 Board meeting, staff use a "liberal eye" when reviewing signatures, with an overall priority on looking for signature similarities to try and match signatures. (Doc. 6, Plfs.' TRO Brf., Ex. 1, 8/24/18 Trans., Page ID # 226). "[I]t is only in the case where . . . we can't get there at all that we call it incomplete for that reason." *Id.*

More importantly, however, as shown in the staff report for PTV's petition, only 128 signatures were invalidated under the "incomplete signature category," which includes "non-matching" signatures. (Ex. 1, 8/31/18 Staff Report, p 4.). While Defendants have not segregated or compiled a separate statistic for the sub-total of the 128 signature that were rejected as "non-matching," these rejections did not cause PTV's petition to fall below the number of signatures required to recommend

11

certification.  In other words, Plaintiffs were not harmed in any way by the Bureau's rejection of the 128 signatures, including any rejections that were based on "non-matching" signatures because the petition was still recommended for certification.  As a result, Defendants have not caused a concrete and actual injury to Plaintiffs, and do not have standing to bring their claims.  Without standing, Plaintiffs cannot demonstrate they have a substantial likelihood of succeeding on the merits of their claims.  This factor weighs in favor of Defendants.

### C.   Plaintiffs cannot demonstrate a continuing, irreparable injury necessary for warranting issuance of injunctive relief.

Like their failure to show an injury for purposes of standing, Plaintiffs cannot demonstrate irreparable harm.  Plaintiffs' argument in support of this factor consists of two sentences and is based solely on the premise that their constitutional rights have been violated.  (Doc. 6, Plfs.' TRO Brf., Page ID ## 129-130).

Plaintiffs were aware or should have been aware from their presence at the August 24, 2018 Board meeting that Director Williams and the Bureau intended to issue a staff report regarding the results of the second sample of PTV's petition on August 31, 2018.  (Doc. 6, Plfs.'

TRO Brf., Ex. 1, 8/24/18 Trans., Page ID ## 243-244).  And that the Board would then meet on September 6, 2018 to consider the staff report and make a determination as to the sufficiency of PTV's petition. *Id.* ("our intent would be to have that full staff report before you at the September 6th meeting.  Working backwards with the math, I think that means we're going to need a staff report . . . by the Friday the 31st.").

True to the Director's word and as discussed above, the Bureau issued its staff report at approximately 4:17 p.m., on August 31, and in that report the Bureau recommends that PTV's petition be certified. (Ex. 1, 8/31/18 Staff Report).  The Bureau also formally noticed the Board's meeting for 10:00 a.m., Wednesday, September 6, 2018.  (Ex. 2, 9/6/18 Notice).  As a result, the Board will meet on September 6 to vote on the sufficiency of Plaintiffs' petition. Thus, at this time, Plaintiffs' petition has been given the green light, and a final decision will be made by the Board on September 6.

In their request for relief, Plaintiffs ask the Court to order Defendants to (1) accept their signer affidavits and certify that the PTV petition has sufficient signatures for placement on the November 6 ballot based on the first sample, and (2) take such other or further

action as necessary to certify the petition for placement on the ballot.
(Doc. 6, Plfs.' TRO Mtn., Page ID ## 102-103).  In their brief, Plaintiffs
further ask the Court to enjoin Defendants from rejecting signatures
"pursuant to the challenges practices."  (Doc. 6, Plfs.' TRO Brf., Page ID
# 131).

A party who has established a constitutional violation is entitled
to injunctive relief if (1) the failure to issue the injunction is likely to
result in continuing irreparable harm and (2) there is no other adequate
remedy at law.  *United States v. Miami Univ.,* 294 F.3d 797, 816 (6th
Cir.2002); *Dayton Christian Schs., Inc. v. Ohio Civil Rights Comm'n,*
766 F.2d 932, 961 (6th Cir. 1985) (citations omitted), *rev'd on other
grounds,* 477 U.S. 619 (1986).

To be entitled to injunctive relief, plaintiffs must first show that a
failure to issue an injunction or other equitable relief is likely to result
in continuing irreparable harm.  *Elrod v. Burns,* 427 U.S. 347, 373
(1976); *see also Jones v. Caruso,* 569 F.3d 258, 277 (6th Cir. 2009)
(quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,* 23 F.3d
1071, 1079 (6th Cir. 1994)) ("Violations of First Amendment rights
constitute per se irreparable injury.").  However, in order for the court

14

to find irreparable harm to be continuing, future harm cannot be speculative. *Reporters Committee for Freedom of Press v. AT & T Co.,* 593 F.2d 1030, 1068 (D.C. Cir. 1979).

Even if Plaintiffs were temporarily "injured" by the Bureau's signature review process, there is no continuing harm since the Bureau has recommended certification of the petition based on the results of the second sample. To the extent Plaintiffs still wish to pursue their constitutional challenges to the signature review process, those challenges can be addressed in the ordinary course of litigation. But there is no need for the Court to grant injunctive relief since Plaintiffs' are suffering no present injury from the application of the signature review process. This factor weighs in Defendants favor.

### D. The harm to others factor weighs in favor of the Defendants.

In considering the factors for injunctive relief, "[h]arm to others includes harm to the defendant." *Chrysler Corp. v. Franklin Mint Corp.,* 32 F.3d 569 (6th Cir. 1994) (unpublished table opinion). Defendants have the responsibility of ensuring that initiative petitions to amend Michigan's Constitution are properly supported by a sufficient number of registered and qualified voters. The integrity of the State's

15

initiative petition process is undermined when false or unverified
signatures are used in a petition drive. In this case, the Bureau of
Elections staff report states that PTV attempted to rehabilitate the
"signature" of a person who *died* at least five months prior to the date
the petition was signed. (Ex. 1, 8/31/18 Staff Report, p. 2, n. 2). This
irregularity along with other errors noted in the staff report underscore
the importance of undertaking a thorough and careful review of petition
signatures. Plaintiffs' request that this Court simply certify the
petition is harmful to Defendants and the process. This factor weighs in
favor of Defendants.

### E. The public interest factor weighs in favor of the Defendants.

The State has considerable interest in, and leeway, to protect the
integrity of its initiative process. *Buckley v. American Constitutional
Law Foundation, Inc.*, 525 U.S. 182, 191 (1999); *Taxpayers United for
Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993). In the
ordinary case involving a request for injunctive relief, the parties
discuss the first three factors and then give lip service to the public
interest as being substantially aligned with the interest of one of the
parties. But in an elections case, the public interest is of paramount

16

importance.  The public has a compelling interest in the Secretary of State ensuring an orderly and timely election.

PTV argues that "the public is best served by including the Promote the Vote initiative on the ballot…."  (Doc. 6, Plfs.' TRO Brf., Page ID # 131).  But here the Bureau of Elections staff is recommending placement of its initiative petition on the 2016 November ballot.  An injunction here would upset the status quo, mandate a change in election procedures, and grant Plaintiffs the ultimate requested relief. See Plfs.' Compl., Doc. 1, Page ID # 22; *See Dunn v. Retail Clerks Intern. Ass'n,, 2*99 F.2d 873, 874 (6th Cir. 1962).  This factor weighs heavily against Plaintiffs.

This factor thus weighs in favor of the State.

## CONCLUSION AND RELIEF REQUESTED

As set forth above, a balancing of the four equitable factors supporting a request for injunctive relief weigh in favor of Defendants and thus Plaintiffs' motion should be denied.  Alternatively, the motion and current hearing date, September 6, 2018 at 10:00 a.m., should be adjourned until the parties and the Court can have a conference to

discuss the status of the case given the Board's scheduled meeting on

the same date.

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Denise C. Barton (P41535)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email:  meingasth@michigan.gov
P55439

Dated:  August 31, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2018, I electronically filed the above
document(s) with the Clerk of the Court using the ECF System, which
will provide electronic copies to counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email:  meingasth@michigan.gov
P55439
